2015 IL App (1st) 143507

FIRST DIVISION
JUNE 8, 2015

No. 1-14-3507

|  |  |  |
|---|---|---|
|  | ) | Appeal from the |
|  | ) | Circuit Court of |
| *In re* ISAIAH D., a Minor, | ) | Cook County. |
|  | ) |  |
| Respondent-Appellant. | ) | No. 14 JD 2396 |
|  | ) |  |
|  | ) | Honorable |
|  | ) | Andrew Berman, |
|  | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justice Harris concurred in the judgment and opinion.
Justice Connors specially concurred, with opinion.

## OPINION

¶ 1     This appeal arises from the trial court's November 25, 2014 order adjudicating respondent-appellant Isaiah D. (respondent) to be an habitual juvenile offender (HJO) and a violent juvenile offender (VJO) and sentencing him to the Department of Juvenile Justice (DOJJ) until the age of 21, pursuant to the mandatory sentencing provisions of the Juvenile Court Act of 1987 (Juvenile Court Act or Act).  See 705 ILCS 405/5-815, 5-820 (West 2012).

¶ 2     Respondent's appeal raises two sets of challenges to his sentence.  First, respondent argues that his guilty plea in a prior case in 2013 cannot be used as a predicate offense to support his HJO or VJO status, due to the trial court's alleged errors in admonishing respondent in the 2013 case to ensure that his plea was knowing and voluntary.  In other words, respondent attempts to challenge the sufficiency of the admonishments given in his 2013 guilty plea, within the context of this appeal of his 2014 conviction in which he was adjudicated an HJO and a VJO.  Separately, respondent urges that the Juvenile Court Act's mandatory sentencing provisions for a

juvenile adjudicated an HJO or a VJO violate the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution.

¶ 3                               BACKGROUND

¶ 4    Respondent, a minor born in 1997, has been adjudicated a delinquent minor on three occasions—in 2012, 2013, and 2014.  In conjunction with a jury verdict finding him guilty of the third offense in 2014, he was adjudged an HJO pursuant to section 5-815 of the Juvenile Court Act, which provides that a minor is an HJO upon a third adjudication of delinquency for an offense that would be a felony if prosecuted as an adult.  705 ILCS 405/5-815 (West 2012).  At the same time, he was adjudicated a VJO under section 5-820 of the Juvenile Court Act.  That provision of the Juvenile Court Act applies upon a minor's second finding of delinquency for an offense that, in an adult case, "would have been a Class 2 or greater felony[,] involving the use or threat of physical force or violence," or which involves a firearm.  705 ILCS 405/5-820 (West 2012).

¶ 5    The respondent's guilt in the three underlying offenses is not in dispute.  In 2012, respondent was adjudicated a delinquent minor after entering a guilty plea to the offense of possession of a stolen motor vehicle.  The facts of that case are not at issue in this appeal.

¶ 6    In 2013, in a separate case, respondent entered a plea of guilty to the charge of aggravated discharge of a firearm.  The facts underlying the commission of that offense are not at issue in this appeal.  However, respondent's appeal relies largely on the *circumstances* surrounding his guilty plea in the 2013 case.

¶ 7    Respondent, who was represented by counsel in the 2013 case, appeared before the court on July 25, 2013.  On that date, respondent's counsel, the assistant State's Attorney, and the court

participated in a conference and reached a plea agreement: in exchange for respondent's guilty plea, respondent would be sentenced to four months in the DOJJ, after which time the court would receive a report regarding respondent's behavior. If the report was positive, the court would release respondent on probation; otherwise, respondent could be sentenced to additional time in the DOJJ. After the conference, respondent's counsel informed the court that respondent would accept the plea agreement. According to the transcript, the court then addressed respondent directly as follows:

> "THE COURT: Okay. So I told you, Isaiah, that – I spoke to your lawyer, actually, what I would do if you were to plead guilty to the charge of aggravated discharge of a firearm, that I would sentence you to four months in the Department of Justice or DOC with a bring back, meaning if you come back through the criminal courts that I'd put you back on a type of probation, but you have to come back through the court. If you don't come back through this court,[1] you'll just go back there and serve out the nine to twelve months, whatever it is that they give you. So do you understand that? Is that a yes?
>
> MINOR RESPONDENT: Yes.

---

[1] In proceedings on September 24, 2014, the trial court explained that the phrase "come back through this court" was an inaccurate transcription of the court's discussion of the behavioral report to be submitted to the court after respondent's four months in the DOJJ had been completed. Respondent does not dispute this correction.

THE COURT: Okay. Now, by accepting that offer, that means that you're pleading guilty to the charge. It means that there won't be a trial today. Where the witnesses that were in court today would testify, you would be here with your lawyer watching it happen. [Where you would watch your lawyer question the witnesses[2]], you could be a witness in your own case if you chose to be. You could also call witnesses in your own defense if you wanted to, and the State would have to prove to me beyond a reasonable doubt that you did commit the crime of aggravated discharge of a firearm on June 20th. So that will not happen if we don't have a trial. So are you clear about all of those things?

MINOR RESPONDENT: Yes.

THE COURT: Now, you know the sentence is going to be – I can't sentence you today because I have to get an updated social investigation, so that will take – well, the problem is that I'm going to be gone for two weeks, so because of that, I guess you're going to be held here one week – I'm going to credit the four months from today, but I won't be able to sentence you until I come back

---

[2] Although the original transcript from the 2013 proceedings recorded the phrase "[w]hereas you question the witnesses," in proceedings on September 24, 2014, the trial court explained that the transcript was incorrect, and that the trial court actually said "[w]here you would watch your lawyer question the witnesses." Respondent does not dispute this correction.

in a couple of weeks because I just want to have time to get that
done.

So this is what you want to do today then?  Do you accept
that offer?

MINOR RESPONDENT: Yes."

¶ 8     Accordingly, respondent was sentenced pursuant to the July 2013 guilty plea.  After serving four months in the DOJJ, respondent was placed on probation.  There is no indication in the record, and respondent does not dispute, that he never moved to withdraw his guilty plea or to appeal from the July 2013 sentence following his guilty plea.

¶ 9     In 2014, the instant case arose out of a new offense committed by respondent and unrelated to the discharge of a firearm that was the subject of the 2013 guilty plea.  On June 17, 2014, respondent was one of four young men who were arrested for assaulting and robbing a 15-year-old boy, Anthony Sargent, of the dirt bike which Sargent had been riding.  According to Sargent, one of the four men struck him, causing him to lose control of the bike and fall to the ground.  Sargent testified that respondent then threw him to the ground while another individual removed Sargent's cellular phone from his pocket.  Respondent and the other three assailants took Sargent's bike and left the scene.   Respondent and the other three young men were arrested later that day hiding in the basement of one of the offenders' homes, where Sargent's bike and cellular phone were recovered.

¶ 10    Respondent was charged with aggravated battery and robbery.  Before trial, the State filed a petition seeking to have respondent adjudicated as an HJO pursuant to section 5-815 of the Juvenile Court Act, based on his 2012, 2013, and 2014 offenses.  See 705 ILCS 405/5-815

(West 2012). In the same petition, the State also sought adjudication of respondent as a VJO pursuant to section 5-820 of the Act, on the basis of his 2013 guilty plea to aggravated discharge of a firearm and the 2014 battery and robbery. See 705 ILCS 405/5-820 (West 2012).

¶ 11    On August 14, 2014, respondent filed a motion to dismiss the State's petition to prosecute him as an HJO and VJO. That motion argued that, when respondent agreed to plead guilty on the 2013 charge of aggravated discharge of a firearm, the trial court violated his due process rights by failing to determine whether respondent understood the rights that he was waiving by entering the plea; failing to admonish him as to the consequences of his plea and the maximum penalty that could be imposed; and failing to determine whether the plea was voluntary. As a result of the alleged deficiencies surrounding that plea, respondent argued that the 2013 plea of guilty to aggravated discharge of firearm could not be used as a predicate offense to establish respondent's status as either an HJO or a VJO.

¶ 12    The State opposed the motion, arguing that the trial court's admonishments in the 2013 plea complied with due process requirements and that respondent understood his rights and entered the guilty plea knowingly and voluntarily. The State argued that the court correctly advised respondent that after four months in the DOJJ he could be recommitted to the DOJJ for "whatever it is that they give you." The State argued that the court was not required to "use magic words to admonish" respondent, but that it was sufficient that respondent was aware of his rights—specifically, that he would serve only four months in the DOJJ and be permitted to serve the remainder as probation rather than in the custody of DOJJ. The State claimed the trial court "went above and beyond and gave an in-depth description of the trial rights the minor was giving up" and a "complete and accurate statement of the possible consequences of entering the

6

admission."'  The State also noted that if respondent "had appealed or attacked the plea directly, any insufficiency in the admonishments could have been remedied" in the 2013 case, and that he "should not be allowed to accept a plea agreement when it behooves him to do so, and then, having never attacked it directly, repudiate its collateral use and avoid the lawful consequences of his actions."

¶ 13    On September 24, 2014, the trial court (which was the same judge who had presided over the entry of respondent's 2013 guilty plea) heard argument and denied respondent's motion to dismiss the VJO and HJO petitions.  Notably, at the September 24, 2014 hearing, the trial court stated that there were several errors in the official transcript of the 2013 admonishments.  With respect to the portion of the admonishments that was transcribed as the court telling respondent that "you have to come back through the court" during the 2013 hearing, the judge explained that this was an error:

> "[W]hat I really was saying and what the transcript should have
> said was I'm talking about coming back with a positive report –
> which rhymes with court – and that's what we always say.  And
> you'd have to come back with a report and if you don't come back
> with a positive report ***.  And so that whole paragraph is
> nonsensical and the real thing that was said was talking about
> coming back with a positive report to be then vacated.  And I know
> all the lawyers will not question that because you've all heard me
> say that many times, and you know that's a typo."

¶ 14    The court also stated that the portion of the transcript that says "[w]hereas you question the witnesses" was wrong, explaining:  "What I always say is [']where you would watch your lawyer question the witnesses['], and that's what is said in every admonishment."  Respondent did not and does not dispute the trial court's clarifications regarding the contents of its 2013 admonishments.

¶ 15    The State argued that the admonishments were more than sufficient, as "what the Court admonished him would happen is exactly what did happen in that case—*** he served his four months; he had a positive report; and then he was placed on probation."  Respondent argued that the court had failed to adequately admonish him, particularly "with respect to the maximum punishment that can be provided."  Respondent argued that although the court had told respondent he could serve "9 to 12 months" after review of the report following his initial 4 months in custody, that time frame was "a guideline, but it is not the maximum punishment that can be provided on a Class 1 felony."

¶ 16    The trial court noted that "[respondent] was in fact vacated after four months and put back on probation," and thus  respondent "got exactly the sentence that he was promised" at the time of his 2013 plea.  The trial court concluded that its admonishments had been sufficient, as it had "made sure that [respondent] understood *** 'the things he was giving up' and exactly the sentence he was going to receive, which was exactly the sentence that he did receive."  Thus, the court denied respondent's motion to dismiss the State's petition seeking to adjudicate him as an HJO and a VJO.

¶ 17    A jury trial proceeded with respect to respondent's involvement in the 2014 robbery of Sargent.  On November 5, 2014, the jury found respondent guilty of aggravated battery and

robbery. Respondent was sentenced on November 25, 2014. As the Juvenile Court Act states that a juvenile who is adjudicated either an HJO or a VJO "shall" be committed to the DOJJ until the age of 21, the trial court entered this mandatory sentence. See 705 ILCS 405/5-815, 5-820 (West 2012). Respondent filed a timely notice of appeal from that sentence on November 26, 2014; thus we have jurisdiction over his appeal pursuant to Illinois Supreme Court Rule 606(b). Ill. S. Ct. R. 606(b) (eff. Feb. 6, 2013). The State does not dispute that we have jurisdiction over respondent's constitutional challenges to his mandatory sentence. However, as discussed below, the State disputes our jurisdiction with respect to respondent's arguments regarding the admonishments given at the time of his 2013 guilty plea, which respondent faults as the predicate for his adjudication as an HJO or a VJO.

¶ 18                                    ANALYSIS

¶ 19    Before we may reach the substance of the parties' arguments regarding the 2013 admonishments which respondent claims were insufficient, we must first address the State's contention that we lack jurisdiction to review those admonishments. The State makes multiple jurisdictional arguments.

¶ 20    First, the State argues that we lack jurisdiction to consider respondent's challenge to the use of the 2013 plea to support his status as an HJO and a VJO because "it is not mentioned in respondent's Notice of Appeal." The State argues that "respondent only listed that he was appealing the robbery finding" and that his notice contained "no mention of the HJO or VJO findings." Our supreme court has held that a notice of appeal is to be "liberally construed" and "will confer jurisdiction on an appellate court if the notice, when considered as a whole, fairly and adequately sets out the judgment complained of and the relief sought so that the successful

9

party is advised of the nature of the appeal." *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34 (1979).

¶ 21    Liberally construed, the notice of appeal in this case encompassed the HJO and VJO findings.   The notice of appeal is initiated by use of a form which states:  "An Appeal is taken from the Order of Judgment described below."  The form contains a list of blank spaces for the appellant to provide information as to the nature of the offense, judgment, the date of judgment, and sentence.  Although in respondent's notice of appeal, "robbery" is handwritten in the entry for "offense," the form also references the sentence of "commit[ment] to DOC [Department of Corrections] until 21" and the sentencing date of November 25, 2014.  As that particular sentence was specifically mandated by the HJO and VJO provisions of the Juvenile Court Act, the guilty plea in the 2013 case underpinned respondent's status as an HJO and a VJO and was implicated by the notice of appeal.

¶ 22    There is nothing in the applicable rules of our supreme court suggesting that the notice of appeal must contain further specificity.  Rule 606 governs the perfection of appeals from juvenile court cases as well as criminal matters.  Ill. S. Ct. R. 606 (eff. Feb. 6, 2013).   Rule 606(d) sets forth a sample notice of appeal form and states that a party's "notice of appeal shall be substantially in the following form."  Ill. S. Ct. R. 606(d) (eff. Feb. 6, 2013).  The sample form set forth in Rule 606(d) contains entries for "[d]ate of judgment or order," "[o]ffense of which convicted" and "[s]entence." *Id.* The form used by respondent in this case is substantially similar to that which is prescribed by Rule 606(d).  The rule does not suggest that respondent must specifically state that he is challenging his HJO and VJO status, in addition to specifying the underlying judgment or sentencing order.

¶ 23    The case cited by the State regarding respondent's allegedly insufficient notice of appeal concerned a civil appeal, and was not governed by Rule 606. See *McGath v. Price*, 342 Ill. App. 3d 19, 30-31 (2003). The appellate court in that case found that there was no jurisdiction to review an order that "was not designated in any manner *whatsoever* in the notice of appeal." (Emphasis added.) *Id.* at 30. That is not the situation here, as respondent specified that he was appealing the November 25, 2014 order *and* corresponding sentence. Accordingly, we reject the State's argument that respondent's notice of appeal is insufficient to invoke appellate jurisdiction.

¶ 24    The State additionally challenges our jurisdiction based upon respondent's failure to file a motion to withdraw his 2013 guilty plea for aggravated discharge of a firearm or to file an appeal from his sentence in the 2013 case, which was a separate case from the 2014 robbery case that adjudicated him an HJO and a VJO. The State argues that the 2013 case was the proper forum for respondent to challenge the adequacy of the admonishments surrounding his 2013 guilty plea, and that his failure to contest that plea in a timely manner deprives us of appellate jurisdiction to consider those admonishments within the context of this subsequent 2014 case. In other words, respondent's adjudication as an HJO and a VJO, which was done in the 2014 case, rests in part upon his guilty plea entered in the 2013 case and his adjudication as an HJO and a VJO will only stand if the 2013 guilty plea is allowed to stand.

¶ 25    The State's argument relies principally on our supreme court's 2006 decision in another juvenile delinquency case involving a guilty plea, *In re J.T.*, 221 Ill. 2d 338 (2006). In *J.T.*, a juvenile agreed to plead guilty in exchange for a sentence of probation. *Id.* at 342. After the trial court admonished the juvenile of the consequences of the guilty plea, the court accepted the plea. *Id.* At the time that the trial court sentenced the juvenile to 18 months' probation, the court

admonished the juvenile that he had a right to appeal the sentence within 30 days. *Id.* at 342-43. The juvenile did not move to withdraw his guilty plea or file a notice of appeal. *Id.* at 343.

¶ 26    Over two months later, the State filed a petition alleging that the juvenile had violated the provisions of the conditions of his probation by failing to attend school and committing other offenses. *Id.* Following an evidentiary hearing, the court found that the juvenile had violated the provisions of his probation and committed the juvenile to the Department of Corrections. *Id.* at 344.

¶ 27    The juvenile then appealed, arguing that when the trial court sentenced him to probation, it had failed to properly admonish him regarding his right to seek withdrawal of his guilty plea pursuant to Supreme Court Rule 605 (Ill. S. Ct. R. 605 (eff. Nov. 1, 2000)), and that the case should be remanded to the trial court to permit him to move to withdraw his guilty plea. *J.T.*, 221 Ill. 2d at 344. The juvenile in *J.T.* "acknowledged that he did not file a written motion to withdraw his plea or a notice of appeal, but argued that because juveniles have no right to postconviction relief, the appellate court should consider the merits of his claims in the interest of fairness." *Id.*

¶ 28    The State responded that "because J.T. did not file a timely notice of appeal, the appellate court was without jurisdiction to hear any issues relating to J.T.'s guilty plea." *Id.* The appellate court rejected that argument, holding that "where the trial court has failed to give proper [admonishments], the judgment may be attacked at any time." *Id.* Pursuant to Supreme Court Rule 605(c) (Ill. S. Ct. R. 605(c) (eff. Nov. 1, 2000)), the appellate court in *J.T.* proceeded to find that the trial court's admonishments had been insufficient because they failed to advise the minor, among other things, that he could have an attorney to assist him in the postplea motion, that he

would waive any grounds not raised in the motion, and that the State could reinstate any charges that were dismissed as part of the plea negotiations. *J.T.*, 221 Ill. 2d at 344.

¶ 29    Upon appeal, our supreme court, however, concluded that the appellate court had lacked jurisdiction to consider the sufficiency of the admonishments given in the juvenile's earlier plea. First, the supreme court noted that "the appellate court's rationale for holding that a defendant may attack the judgment at any time when the trial court has failed to give proper [admonishments] was rejected" by a 2004 supreme court decision. *Id*. at 345 (citing *People v. Jones*, 213 Ill. 2d 498 (2004)). The supreme court explained that in *Jones*, it had concluded that "while the giving of improper [admonishments] constitutes error, it does not divest the circuit court of jurisdiction" so as to render a resulting conviction a "void" judgment that may be attacked at any time. *Id*. at 346 (citing *Jones*, 213 Ill. 2d at 509).

¶ 30    The supreme court further held that the appellate court's decision "suffer[ed] from a more fundamental flaw——[specifically,] the appellate court lacked jurisdiction to consider the admonishment issue" due to the juvenile's failure to file a timely appeal following the entry of judgment on the juvenile's guilty plea. *Id.* The supreme court stated that "an appeal is perfected by the timely filing of a notice of appeal, and it is this step which vests the appellate court with jurisdiction." *Id.* (citing Ill. S. Ct. R. 606(a) (eff. Dec. 13, 2005)). The court explained: "Rule 604(d) requires that in order to appeal from a judgment entered upon a plea of guilty, a defendant must first file in the trial court a written motion to either withdraw his guilty plea or reconsider the sentence. [Citation.] In such cases, the notice of appeal must be filed within 30 days of the denial of that motion. [Citation.] The appellate court may also allow the filing of a late notice of appeal. [Citation.]" *Id.*

¶ 31 The supreme court concluded: "In the present case, J.T. did not file a timely notice of appeal from the order sentencing him to probation, a written motion to either withdraw his plea or reconsider his sentence, or a motion for leave to file a late notice of appeal. Consequently, the appellate court had no jurisdiction to consider any issues arising from either his guilty plea or his sentence." *Id.* at 346-47. The court concluded that "because J.T. failed to timely perfect an appeal from the order sentencing him to probation, the appellate court had no jurisdiction to consider the issue of whether the cause should be remanded for proper Rule 605 [admonishments]." *Id.* at 353.

¶ 32 Notably, in addition to finding that the appellate court lacked jurisdiction, the supreme court in *J.T.* discussed the minor's additional argument that the supreme court should exercise its supervisory authority to remand the case to the trial court for proper admonishments; permit him to file a late notice of appeal; or permit him to litigate the issue in a postconviction proceeding. *Id.* at 347. However, after reviewing the content of the trial court's admonishments and noting the minor's lengthy history of delinquency, the supreme court determined that "supervisory relief is not warranted." *Id.* at 347-48 (noting that although the trial court's admonishments "did not strictly comply with Rule 605(c), they were sufficient to put J.T. on notice that he could challenge his guilty plea, and that some action on his part within 30 days was necessary if he wished to appeal"). Further, the supreme court in *J.T.* specifically declined to "address the issue of whether juveniles can seek relief under the Post-Conviction Hearing Act" (725 ILCS 5/122-1 *et seq.* (West 2012)) on the grounds that "the parties offer[ed] minimal argument on this issue." *J.T.*, 221 Ill. 2d at 348-49.

¶ 33    Notably, Justice Freeman authored a dissenting opinion in *J.T.* which articulated fairness concerns that we find are also implicated by respondent's appeal in this case.  Justice Freeman's dissent expressed concern that because the majority found that the appellate court lacked jurisdiction, and further did not address whether the Post-Conviction Hearing Act applied to juveniles, coupled with the supreme court's failure to exercise its supervisory authority, J.T. was "left without remedy in spite of his age, his lack of maturity, and his limited mental faculties." *Id.* at 359 (Freeman, J., dissenting).

¶ 34    However, Justice Freeman "agree[d] that the appellate court lacked jurisdiction because J.T. failed to file a timely notice of appeal or request leave to file a late appeal." *Id.* at 365. Justice Freeman explained that he dissented because he believed that "J.T.'s personal circumstances, as well as the systemic differences between juveniles and adult defendants[,] mandate the use of supervisory authority to provide J.T. the right to meaningful review." *Id.* Justice Freeman remarked that the majority opinion "turn[ed] a deaf ear to J.T.'s circumstances" by failing to "determine whether his status as a juvenile argues for the use of supervisory authority to afford him relief." *Id.* at 371-72.  Justice Freeman also criticized the majority for failing to address whether the Post-Conviction Hearing Act should "provide juveniles an avenue for a collateral attack upon a trial court's finding of delinquency." *Id.* at 372.  He wrote that he believed the "punitive nature" of proceedings under the Juvenile Court Act supported the application of the Post-Conviction Hearing Act. *Id.* at 373.[3]  Because the majority declined to

---

[3] Justice Freeman's dissent noted that the supreme court has recognized that the Juvenile Court Act " 'now contains a purpose and policy section which represents a fundamental shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and holding juvenile offenders accountable for violations of the law.' " *Id.* at 374 (quoting *In re A.G.*, 195 Ill. 2d 313, 317 (2001), citing 705 ILCS 405/5-101 (West 1998)).

either address that issue or to exercise its supervisory authority, Justice Freeman remarked that the majority "effectively denie[d] J.T. any avenue of redress for his claims." *Id.* at 378. Justice Kilbride also wrote separately, concurring in the majority's holding that the appellate court lacked jurisdiction but "agree[ing] with Justice Freeman that when juveniles have no other avenue to meaningful review, this court should exercise its supervisory authority to provide relief." *Id.* at 354 (Kilbride, J., concurring in part and dissenting in part).

¶ 35    The State urges us in this case to strictly adhere to the ruling in *J.T.* Since respondent did not appeal from his guilty plea in the 2013 case, the majority's holding in *J.T.* conclusively governs the issue of jurisdiction here. Thus, the State argues that we lack jurisdiction to consider the challenged admonishments from respondent's 2013 case, which respondent now attempts to raise in the context of this appeal of the 2014 case.

¶ 36    Respondent notes, however, that in a 1987 juvenile delinquency decision with a similar procedural history to his case, our appellate court reviewed the admonishments given with a plea in a prior proceeding that was later used as a basis to find the juvenile to be an habitual offender. See *In re J.W.*, 164 Ill. App. 3d 826 (1987). In *J.W.*, the juvenile appealed from an order adjudicating him an habitual offender on the basis that "one of two prior findings of delinquency, which formed the basis of this adjudication, was made without respondent being properly advised of his constitutional rights." *Id.* at 827. Specifically, although the determination of HJO status in *J.W.* was made after a jury found that the juvenile had committed an armed robbery in December 1983, the juvenile's appeal challenged the sufficiency of admonishments made in connection with his April 1983 plea for a prior offense of burglary. *Id.* at 827-28. The appellate court found that the trial court's admonishments had been insufficient, as the trial court "failed to

ascertain whether the respondent understood that he had a right against self-incrimination and a right to confront his accusers" and that his plea waived those rights.  See *id.* at 828-29.

¶ 37    The juvenile in *J.W.* argued that the "improperly obtained admission could not be used in finding him to be a habitual juvenile offender" (*id.* at 829), relying on the United States Supreme Court's decision in *Baldasar v. Illinois*, 446 U.S. 222 (1980).  *Baldasar* concerned an indigent defendant who had been convicted of misdemeanor theft in a proceeding in which he was not represented by counsel and had not waived his right to counsel.  *Id.* at 223.   In a subsequent prosecution on a second theft charge, the State introduced evidence of the prior conviction, pursuant to a statute under which a second conviction for the same misdemeanor offense could be punished as a felony.  *Id.* (citing Ill. Rev. Stat. 1975, ch. 38, ¶ 16-1(e)(1)).  The United States Supreme Court in *Baldasar* reversed the defendant's felony conviction.  The majority opinion did not explain its reasoning, but stated that it was reversing "[f]or the reasons stated in the concurring opinions" (*id.* at 224), and was followed by three separate concurrences discussing why the sixth and fourteenth amendments to the United States Constitution precluded the use of the first conviction to enhance the sentence for the second offense.  *Id.* at 224-29.

¶ 38    In *J.W.*, the First District of our appellate court concluded that in light of *Baldasar*, the juvenile's guilty plea without appropriate admonishments could not be used to support a determination that he was an HJO.  *J.W.*, 164 Ill. App. 3d at 830 ("[L]ike the uncounseled guilty plea in *Baldasar*, this admission was not sufficiently reliable to permit its subsequent use in establishing that the minor respondent was a habitual offender.").  The appellate court thus vacated the juvenile's adjudication as an HJO.  *Id.*

17

¶ 39    Notably, in *J.W.* the issue of appellate jurisdiction was not explicitly discussed or argued except for the following brief reference: "The State notes that the respondent failed to directly challenge the prior adjudication by appealing it.  But we are here concerned with the collateral use of the adjudication."  *Id.*  The *J.W.* decision noted that in *Baldasar* there was "no indication" that the defendant's first theft conviction was ever appealed, but that the United States Supreme Court had nevertheless proceeded to conclude that the prior conviction was "too unreliable for subsequent use as a sentence-enhancing factor."  *Id.*

¶ 40    In this case that we now are asked to decide, the State urges that our 1987 decision in *J.W.* does not control the question of whether we have jurisdiction over respondent's challenge to his 2013 plea admonishments.  Instead, the State contends that our supreme court's subsequent holding in *J.T.* established that "respondent cannot collaterally challenge a prior conviction that he failed to properly challenge directly."  The State argues that in light of *J.T.*, our appellate court's holding in *J.W.* is now "untenable."  In other words, although not explicitly stated, the State suggests that our supreme court's ruling in *J.T.* has implicitly overruled *J.W.*

¶ 41    Our reading of *J.T.* leads us to the conclusion that we lack jurisdiction to review respondent's 2013 guilty plea within the context of this current appeal of his 2014 conviction. We note that *J.T.*, decided in 2006, does not explicitly discuss or overrule the appellate court's 1987 decision in *J.W.*  Nonetheless, it is our view that the language of the jurisdictional holding of *J.T.* is inconsistent with the exercise of appellate jurisdiction that occurred in *J.W.*[4]  Our

---

[4] Moreover, it is notable that the United States Supreme Court's *Baldasar* decision, which was relied upon in *J.W.*, has since been explicitly overruled.  See *Nichols v. United States*, 511 U.S. 738, 748-49 (1994) (holding that it is "consistent with the Sixth and Fourteenth Amendments" that an "uncounseled misdemeanor conviction, valid *** because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction").

supreme court's holding in *J.T.* is *explicit* that under Rule 606(a) (Ill. S. Ct. R. 606(a) (eff. Dec. 13, 2005)), the "timely filing of a notice of appeal" is the determinative "step which vests the appellate court with jurisdiction." *J.T.*, 221 Ill. 2d at 346. *J.T.* made clear that the minor's failure in that case to "file a timely notice of appeal from the order sentencing him to probation, a written motion to either withdraw his [guilty] plea or reconsider his sentence, or a motion for leave to file a late notice of appeal" was all that was necessary to foreclose appellate jurisdiction over "any issues arising from either his guilty plea or his sentence." *Id.* at 346-47. That broad holding encompasses the facts of this case. Here, as in *J.T.*, respondent received probation after entering a guilty plea, but he did not move to withdraw the plea and failed to file a timely notice of appeal from the sentence imposed on that plea. As in *J.T.*, respondent only challenged the guilty plea after he was faced with a new, harsher sentence for his subsequent conduct after the plea. Adhering to our supreme court's holding in *J.T.,* we conclude that respondent's failure to appeal from his guilty plea and corresponding sentence in a timely manner deprives us of jurisdiction to consider that conviction within the context of his appeal from the 2014 conviction.

¶ 42     Respondent argues that *J.T.* does not deprive us of jurisdiction because it is procedurally distinguishable from his situation. Respondent emphasizes that he is not attempting to withdraw or vacate his 2013 guilty plea and sentence. Instead, he makes the esoteric argument that he is challenging the *use* of that guilty plea as a predicate offense to support his adjudication as an HJO or a VJO. That is, he does not seek to eliminate the 2013 guilty plea altogether; rather, he seeks to prevent its collateral use to enhance his sentence in this subsequent case resulting from his conviction in the 2014 robbery offense. In our view, however, the broad holding of *J.T.* precludes our ability to review the 2013 guilty plea, notwithstanding respondent's interesting

procedural distinction. *J.T.* unequivocally held that the juvenile's failure to file a timely notice of appeal deprived the appellate court of "jurisdiction to consider *any issues arising from* either his guilty plea or his sentence." (Emphasis added.) *Id.* Respondent does not dispute that he failed to file a timely notice of appeal from that plea, and his challenge to the sufficiency of the 2013 guilty plea is certainly an "issue arising from" that plea, whether raised in an attempt to vacate the plea entirely or, as he argues, to preclude its use to support his adjudication as an HJO and a VJO in the 2014 case which is the subject of this appeal.

¶ 43    As we conclude that our exercise of jurisdiction over the challenged admonishments would be incompatible with our supreme court's holding in *J.T.*, we are precluded from reaching the merits of respondent's arguments regarding the claimed deficiencies in his 2013 guilty plea. "As an appellate court, we are required to follow supreme court precedent on an issue 'unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court.' " *In re Shermaine S.*, 2015 IL App (1st) 142421, ¶ 26 (quoting *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23). Under our supreme court's holding in *J.T.*, respondent cannot seek to activate this court's power to review the allegedly insufficient admonishments within the context of his 2014 conviction. In other words, it is too late. We thus conclude that we lack jurisdiction, in the context of this appeal, to review the sufficiency of the admonishments given at the time of respondent's guilty plea in his prior case in 2013.

¶ 44    Although we are bound by the holding of *J.T.'s* majority opinion that deprives us of appellate jurisdiction, we are mindful of the fairness concerns articulated in Justice Freeman's dissent in *J.T.* and reiterated by respondent's arguments in this appeal. Specifically, we acknowledge that as a juvenile, respondent is unable to make use of the Post-Conviction Hearing

Act (725 ILCS 5/122-1 *et seq.* (West 2012)) to obtain collateral review of claimed errors in his 2013 case. An adult criminal defendant would not have those restrictions. See *In re Timothy P.*, 388 Ill. App. 3d 98, 102 (2009) ("[W]e are mindful that the Post-Conviction Hearing Act [citation] has never been held to apply to juvenile proceedings, thereby potentially leaving the juvenile without a remedy for his constitutional claims.").[5] Thus, juveniles in similar circumstances who fail to file a timely notice of appeal (and thus lose the ability to invoke appellate review pursuant to *J.T.*) face the risk of being wronged by insufficient admonishments without any procedural remedy to seek review of the claimed error.

¶ 45    However, our supreme court in *J.T.* considered this very concern but did not find it persuasive. The majority opinion in *J.T.* expressly noted the minor's argument that "because juveniles have no right to postconviction relief," fairness supported permitting appellate jurisdiction notwithstanding his failure to file a timely notice of appeal. *J.T.*, 221 Ill. 2d at 344. Nonetheless, *J.T.* was unequivocal that it is the "timely filing of a notice of appeal *** which vests the appellate court with jurisdiction" pursuant to Rule 606(a), and thus the minor's failure to do so was dispositive in precluding appellate jurisdiction. *Id.* at 346-47.

¶ 46    Our lack of appellate jurisdiction pursuant to *J.T.*, combined with respondent's inability to use the Post-Conviction Hearing Act, means that, in the words of Justice Freeman, "[t]he minor respondent is left without remedy." *Id.* at 359 (Freeman, J., dissenting). Like Justice Freeman, we note that we are also "troubled" that *J.T.*'s holding, combined with the inability of juveniles to

---

[5] *Timothy P.* applied the "plain error doctrine" to review the sufficiency of admonishments, notwithstanding the State's argument that the juvenile had forfeited the claim. *Id.* at 101-02. In contrast, we lack jurisdiction to review the claimed errors in respondent's 2013 case and thus the plain error doctrine does not permit us to review the circumstances of the admonishments given in that case.

seek collateral review, "effectively denies [respondent] any avenue of redress for his claims." *Id.* at 378-79.

¶ 47     However, as urged by Justice Freeman's dissent in *J.T.*, the supreme court could nonetheless consider whether respondent's "status as a juvenile argues for the use of supervisory authority to afford him relief" from the allegedly deficient admonishments given in his 2013 guilty plea. *Id.* at 372.  As noted by Justice Freeman, in another juvenile case, the supreme court declined to decide whether the Post-Conviction Hearing Act applied to juveniles but "nonetheless fashioned a remedy for the minor by remanding for further proceedings in compliance with Rule 604(d)." *Id.* at 377 (citing *In re William M.*, 206 Ill. 2d 595 (2003)).

¶ 48     The supreme court "will issue a supervisory order only if the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice, or where intervention is necessary to keep an inferior court or tribunal from acting beyond the scope of its authority." *Id.* at 347 (majority opinion).  Respondent's case may very well be one in which the supreme court determines that exercise of supervisory authority is warranted, in order to afford respondent an avenue of relief from the claimed errors committed in connection with his 2013 guilty plea.

¶ 49     In this regard, we note that the State has acknowledged that the trial court's admonishments did *not* inform respondent of the maximum potential period of commitment, an apparent violation of the Juvenile Court Act.  See 705 ILCS 405/5-605(2)(a) (West 2012).  This court has held that "[a]bsent a clear articulation by the circuit court of the maximum penalty that might be imposed, we cannot conclude that respondent's guilty plea was made with full knowledge of the potential consequences or that there was substantial compliance with" section

5-605(a)(2)) of the Juvenile Court Act. *In re Timothy P.*, 388 Ill. App. 3d at 103. On this basis or other alleged deficiencies in respondent's 2013 guilty plea, the supreme court could determine that exercise of its supervisory authority is warranted to prevent respondent from being left without a remedy. However, under our reading of *J.T.*, this court lacks jurisdiction to afford respondent any relief from the claimed errors accompanying his 2013 guilty plea.

¶ 50 Apart from the issue of jurisdiction, the State additionally argues that respondent forfeited appellate review of any issue related to the alleged insufficiency of the admonishments at respondent's 2013 guilty plea. The State also argues that, assuming we could reach the merits of the issue, the trial court's admonishments were sufficient and that any purported error did not prejudice respondent. Having discussed at length why this court lacks jurisdiction to consider respondent's arguments regarding his 2013 guilty plea, we need not address these additional arguments raised by the State.

¶ 51 In addition to his claims regarding the sufficiency of the 2013 guilty plea admonishments, respondent also raises constitutional challenges to the statutory provisions mandating his sentence of confinement until the age of 21 upon his adjudication as an HJO and a VJO. The Juvenile Court Act provisions regarding HJO and VJO status require, in substantially identical language, that once the court has found that the predicate offenses for HJO or VJO status have been proven, the court *shall* commit the minor to the DOJJ until his 21st birthday. 705 ILCS 405/5-815, 5-820 (West 2012). Respondent argues that the mandatory nature of this sentence violates the eighth amendment of the United States Constitution, as well as the proportionate penalties clause of the Illinois Constitution, because it removes the trial court's discretion in sentencing minors. However, this court has recently rejected identical constitutional challenges

to the mandatory sentence for an HJO. See *In re Shermaine S.*, 2015 IL App (1st) 142421; *In re A.P.*, 2014 IL App (1st) 140327. As set forth below, the reasoning of those decisions is persuasive with respect to both the HJO and VJO statutory provisions and thus respondent's constitutional challenges are unavailing.

¶ 52    At the outset, we note that the Illinois Supreme Court has held that the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution do not apply to juvenile proceedings initiated by a petition for adjudication of wardship. *In re Rodney H.*, 223 Ill. 2d 510, 520-21 (2006). In that decision, our supreme court concluded that a juvenile adjudication of wardship was not criminal in nature and did not impose "punishment" within the meaning of the eighth amendment and proportionate penalties clause. *Id.* However, even if those constitutional provisions did apply, our precedent nonetheless has rejected respondent's arguments.

¶ 53    Whether a statute is constitutional is a question of law, subject to *de novo* review. *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 15. "Statutes carry a strong presumption of constitutionality" and "[i]f reasonably possible, this court will construe a statute so as to affirm its constitutionality." *Id.* That is, "we will resolve any doubt as to the construction of a statute in favor of its validity." *Id.*

¶ 54    We first consider respondent's challenge to the HJO and VJO provisions under the eighth amendment of the United States Constitution. "The eighth amendment, as applied to the states through the fourteenth amendment, prohibits the imposition of cruel and unusual punishment for criminal offenses that are disproportionate in relation to the offense committed or the status of the offender." *Id.* ¶ 17 (citing U.S. Const., amend. VIII). Respondent contends that the

provisions of the Juvenile Court Act requiring a sentence of commitment to the DOJJ until the age of 21 for an HJO or a VJO violate the eighth amendment, as they preclude the trial court "from fashioning individualized sentences for individual minors" and deprives the court of the "opportunity to consider the respondent's youth, his potential rehabilitation, circumstances of the offense or other important factors."

¶ 55    However, our supreme court has explicitly held that the HJO statutory provision mandating commitment until the age of 21 does not violate the eighth amendment.  See *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67 (1980).  *Chrastka* noted that "[s]tate legislatures have traditionally been allowed wide latitude in setting penalties for State crimes" and concluded that "we do not believe that the disposition authorized here rises to the level of cruel and unusual punishment by any stretch of the imagination."  *Id.* at 81-82.  This court, in rejecting another eighth amendment challenge to the HJO mandatory sentencing provision, has recently reaffirmed that "we still find *Chrastka* to be applicable."  *A.P.*, 2014 IL App (1st) 140327, ¶ 25 (noting that "we are bound to honor our supreme court's conclusion on an issue" if not revised by our supreme court or overruled by the United States Supreme Court); see also *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 26 ("Because it is still applicable, we must follow the holding in *Chrastka* and find that Shermaine's commitment *** until the age of 21 does not violate the eighth amendment.").

¶ 56    Respondent acknowledges our supreme court's holding in *Chrastka* but argues that it is "ripe for being overturned" in light of subsequent United States Supreme Court precedent. Particularly, respondent relies on *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), which held that imposition of mandatory life sentences without the possibility of parole for

25

persons under the age of 18 at the time of their crimes violates the eighth amendment. *Id.* at ___, 132 S. Ct at 2460. However, we have specifically rejected a juvenile's reliance on *Miller* to challenge the continuing validity of *Chrastka*. See *Shermaine S.*, 2015 IL App (1st) 142421, ¶¶ 21-25; *A.P.*, 2014 IL App (1st) 140327, ¶¶ 18-22. In particular, we have found that *Miller* is distinguishable because it involved defendants who committed crimes as juveniles but were charged and convicted in the adult court systems. *Id.* ¶ 22. Moreover, we have noted that *Miller* "did not hold that the eighth amendment prohibited *any* mandatory penalties for juveniles, only mandatory natural life sentences without the possibility of parole." (Emphasis in original.) *Id.* Thus, we have concluded that *Miller* is "factually distinguishable and does not support deviating from precedent established in *Chrastka*, which, as an appellate court, we are required to follow." *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 25. In this case, respondent urges that both *A.P.* and *Shermaine S.* were wrongly decided, but raises no new argument to warrant departing from those decisions. Thus, we again conclude that *Chrastka* remains binding and reject respondent's eighth amendment challenge to the HJO and VJO mandatory sentencing provisions.

¶ 57 Separately, respondent urges that, even if they do not violate the eighth amendment, the mandatory sentencing provisions nonetheless violate the proportionate penalties clause of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Respondent contends that, "by emphasizing rehabilitation, Illinois provides greater protection than the federal constitution." For this point, respondent relies on our supreme court's statement in the 2012 decision *People v. Clemons* that "the limitation on penalties set forth in the second clause of article I, section 11, which focuses

on the objective of rehabilitation, went beyond the framers' understanding of the eighth amendment and is not synonymous with that provision." *People v. Clemons*, 2012 IL 107821, ¶ 40.

¶ 58    However, our supreme court has more recently held that "the Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause." *People v. Patterson*, 2014 IL 115102, ¶ 106 (citing *In re Rodney H.*, 223 Ill. 2d 510, 518 (2006)).  Under that proposition, our rejection of respondent's eighth amendment challenge pursuant to our supreme court's decision in *Chrastka* would likewise compel rejection of his proportionate penalties argument.  In fact, we recently applied that logic in rejecting a proportionate penalties challenge: "[B]ecause in *Chrastka*, our supreme court held that sentencing a habitual juvenile offender to a mandatory minimum sentence \*\*\* did not violate the eighth amendment and the proportionate penalties clause provides co-extensive protections, we also reject Shermaine's challenge to the habitual juvenile offender provision under our state constitution." *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 31.

¶ 59    Respondent urges that our supreme court's statement that the proportionate penalties clause is "co-extensive" with the eighth amendment (*Patterson*, 2014 IL 115102, ¶ 106) should be disregarded as an "outlier" that cannot be reconciled with a long history of "cases recognizing the unique importance of rehabilitation, and the rehabilitation of youth in particular."  However, even before our supreme court decided *Patterson*, we had independently concluded that the mandatory sentencing provision of the HJO statute did not violate the proportionate penalties clause.  See *A.P.*, 2014 IL App (1st) 140327, ¶¶ 16-24.  In *A.P.*, we reasoned that "[t]he legislature is entitled to find that, in the case of a recidivist, violent offender such as respondent,

there are no mitigating circumstances to allow for a lesser penalty." *Id.* ¶ 23 (noting our supreme court's statement in *People v. Taylor*, 102 Ill. 2d 201, 206 (1984), that "[t]he rehabilitative objective of [the proportionate penalties clause] should not and does not prevent the legislature from fixing mandatory minimum penalties where it has been determined that no set of mitigating circumstances" would justify a lesser sentence).

¶ 60    We note that respondent's proportionate penalties challenge relies heavily on our supreme court's decision in *People v. Miller*, 202 Ill. 2d 328 (2002), which recognized the "long-standing distinction made in this state between adult and juvenile offenders" and that "young defendants have greater rehabilitative potential." *Id.* at 341-42. *Miller* held that a mandatory life sentence was unconstitutional when applied to a 15-year-old offender convicted on two counts of first degree murder on an accountability theory, as it eliminated the sentencing court's ability to consider factors such as the defendant's age or degree of participation in the crime. *Id.* at 342. Nonetheless, in *Shermaine S.* we held that *Miller* is distinguishable from the HJO sentencing provision, and that "reliance on [*Miller*] to support [a] claim of a violation of the proportionate penalties clause is misplaced." *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 30 (noting that the defendant in *Miller* was tried as an adult and was subject to a natural life sentence). As we concluded in *Shermaine S.*, our supreme court's decision in *Miller* is distinguishable from respondent's case and thus does not undermine the constitutionality of the HJO and VJO sentencing provisions.

¶ 61    We recognize that, although our decisions in *A.P.* and *Shermaine S.* concerned challenges only to the HJO mandatory sentencing provision in section 5-815 of the Juvenile Court Act, respondent here challenges both that provision and its VJO counterpart in section 5-820 of the

Juvenile Court Act. See 705 ILCS 405/5-815, 5-820 (West 2012). However, respondent's arguments are identical with respect to both provisions, and he has offered no persuasive reason to distinguish his case from the identical eighth amendment and proportionate penalties challenges that our court has rejected with respect to the HJO statutory provision mandating commitment until the age of 21. We see no reason why our decisions rejecting the same challenges to the HJO provision do not apply with equal force to the equivalent VJO provision. Accordingly, we conclude that respondent's arguments with respect to both the HJO and VJO mandatory sentencing provisions of the Juvenile Court Act must fail.

¶ 62    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 63    Affirmed.

¶ 64    JUSTICE CONNORS, specially concurring:

¶ 65    I concur with the majority that pursuant to our supreme court's decision in *J.T.*, we are compelled to find that we lack jurisdiction to afford respondent relief from the claimed errors accompanying his 2013 guilty plea. However, I write separately to express my concerns regarding the analysis in *J.T.*, and its implications.

¶ 66    Our supreme court stated in *J.T.*, a case that specifically analyzed proper admonishments of a juvenile, that the appellate process could have provided the defendant adequate relief had he availed himself of it, and that the case did not "involve an issue important to the administration of justice." *J.T.*, 221 Ill. 2d at 348. The court found that having chosen not to file a timely notice of appeal from the order in question, a written motion to either withdraw his plea or reconsider his sentence or a motion for leave to file a late notice of appeal, the appellate court lost jurisdiction to consider any issues arising from his guilty plea or his sentence, and left the

29

defendant "in no different position than any other defendant who chooses not to file an appeal." *Id*. I disagree with these sentiments.

¶ 67    First, I wholeheartedly believe that this issue of properly admonishing a juvenile *is* important to the administration of justice. An incarcerated juvenile, whose liberty has been restrained, should have access to the same remedies and opportunities for justice as an adult offender facing similar circumstances. As Justice Freeman stated in his dissent in *J.T.*:

> "Juveniles are a vulnerable population. As the United States Supreme Court observed in *Eddings v. Oklahoma*, [citation],
>
> 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage. Our history is replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults.' " *Id*. at 380 (Freeman, J., dissenting) (quoting *Eddings v. Oklahome*, 455 U.S. 104, 115-16 (1982)).

¶ 68    Keeping the vulnerability of juveniles in mind, significant changes were made to the Juvenile Court Act, and as our supreme court noted in *In re A.G.*, 195 Ill. 2d 313, 318 (2001), now "virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings." Our supreme court has also noted that an "incarcerated juvenile's liberty is restrained just as effectively as that of an adult offender." *In re B.L.S.*, 202 Ill. 2d 510, 519 (2002).

¶ 69     As things stand after the decision in *J.T.*, if a juvenile defendant who was not properly admonished fails to file a timely notice of appeal from a guilty plea and sentence, a written motion to either withdraw his plea or reconsider his sentence, or a motion for leave to file a late notice of appeal, the appellate court loses jurisdiction to consider any issues arising from his guilty plea or his sentence.  This does not, as the majority opinion states in *J.T.*, leave the defendant "in no different position than any other defendant who chooses not to file an appeal." *J.T.*, 221 Ill. 2d at 348.  Rather, an adult defendant in the same position has the option of filing a petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)). However, our supreme court has refused to analyze whether the Post-Conviction Hearing Act applies to juveniles.  See *J.T.*, 221 Ill. 2d at 349 (declining to address the issue of whether juveniles can seek relief under the Post-Conviction Hearing Act because the "parties offer[ed] minimal argument on this issue"); *In re William M.*, 206 Ill. 2d 595 (2003) (the right of a juvenile to file a petition under the Post-Conviction Hearing act has not been established); *In re A.G.*, 195 Ill. 2d at 321-22 (this court has not reviewed holdings of the appellate court concluding that relief from juvenile proceedings is unavailable under the Post-Conviction Hearing Act).

¶ 70     It seems fundamentally unfair to me that an incarcerated juvenile who was not properly admonished does not have the same remedies available to him or her as an incarcerated adult who was not properly admonished, despite our supreme court's expression that "virtually all of the constitutional requirements of a criminal trial have been introduced into juvenile delinquency proceedings."  *In re A.G.*, 195 Ill. 2d at 318.  I agree with Justice Freeman's opinion that "the changed climate in the treatment of minors in the juvenile court system advocates strongly for

the application of the Post-Conviction Hearing Act." *J.T.*, 221 Ill. 2d at 378 (Freeman, J., dissenting).

¶ 71　　Accordingly, while I agree with the majority's opinion that in light of our supreme court's finding in *J.T.*, we lack jurisdiction to hear the issue in this case, I look forward to guidance from our supreme court regarding these important issues concerning juvenile justice.