# Illinois Official Reports

## Appellate Court

*In re Shermaine S.*, 2015 IL App (1st) 142421

| | |
|---|---|
| Appellate Court Caption | *In re* SHERMAINE S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Shermaine S., a Minor, Respondent-Appellant). |
| District & No. | First District, Third Division<br>Docket No. 1-14-2421 |
| Filed | January 9, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal following respondent's sentence as an habitual juvenile offender for robbery, the appellate court rejected his contentions that the habitual offender provision of the Juvenile Court Act was unconstitutional under the eighth amendment and the proportional penalties clause of the Illinois Constitution because the sentencing court was precluded from considering individualized factors about the minor and rehabilitation, since the appellate court was compelled to uphold the constitutionality of the statute based on the existing precedent set forth 35 years ago in *Chrastka*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-JD-768; the Hon. Stuart Katz, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | Michael J. Pelletier, Alan D. Goldberg, and Jonathon Krieger, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Katarina Durcova, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion. |

## OPINION

¶ 1   Respondent contends the habitual offender provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-815 (West 2012)) is unconstitutional under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportional penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). The gist of his argument is that (i) the mandatory sentencing provision violates the eighth amendment by precluding the sentencing court from taking into consideration individualized factors about the minor, including the offender's youth and attendant characteristics as delineated by the United States Supreme Court in *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2468 (2012), and (ii) taking away the sentencing court's discretion violates the proportionate penalties clause of the Illinois Constitution, which mandates a court consider rehabilitation in imposing a sentence. We are compelled to affirm based on existing precedent set forth some 35 years ago in *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67 (1980).

¶ 2   Following a jury trial, respondent, 17-year-old Shermaine S., was convicted of robbery for taking an iPhone. Shermaine was adjudicated a delinquent minor and, because this was his third offense, sentenced as a habitual juvenile offender and committed to the Department of Juvenile Justice (DJJ) until his twenty-first birthday as required by section 5-815(f) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-815(f) (West 2012)).

¶ 3                              BACKGROUND

¶ 4   On March 7, 2014, the State filed a petition for adjudication of wardship for Shermaine, who was 16 years old at the time. The petition alleged that Shermaine stole an iPhone from Ashley Bradley and charged him with one count each of robbery, theft from person, and simple battery. The State proceeded on one count of robbery and entered *nolle prosequi* on the other two counts. On March 13, 2014, the State gave notice of its intent to charge Shermaine as a habitual juvenile offender under section 5-815 of the Act (705 ILCS 405/5-815 (West 2012)), based on Shermaine's two prior adjudications for burglary.

¶ 5        At trial, Ashley Bradley testified that on March 6, 2014, she was walking home at about 11:30 a.m. near 46th Street and Lake Park Avenue, Chicago. As Bradley listened to music on her iPhone, a person she identified as Shermaine grabbed her from behind and reached for her phone, which she was carrying in her right hand. Bradley turned around and looked at Shermaine's face for a "good two seconds." She said Shermaine told her to give him the phone but she resisted and tried to pull away. Shermaine then twisted her right arm, threw her to the ground, took the phone along with a Target bag she was holding in her left hand, and ran off. Bradley and a man standing nearby ran after Shermaine west on 46th Street and saw Shermaine turn right and head north on Woodlawn Avenue when they lost sight of him. Bradley used the man's cell phone to call the police.

¶ 6        A few minutes later, two Chicago police officers, Isaac Lee and Arturo Martinez, arrived in a marked squad car. The bystander who had assisted Bradley left the scene and was not questioned by the police. Bradley described the perpetrator as an 18- to 21-year-old African American male, 5 feet 8 inches to 6 feet tall, with a light to medium build, dreadlocks, dark skin, and wearing a long, black coat. Lee and Martinez drove Bradley around the area, and within about five minutes, Bradley saw Shermaine on the street and when he was about 15 feet away told the officers, "That's him."

¶ 7        Officer Lee testified that Shermaine was walking briskly, but when he saw the squad car, he turned and started to run away. The officers followed Shermaine to a vacant lot, where Lee got out of the car and chased Shermaine on foot. Lee followed Shermaine to the back of an apartment building at 4335 South Berkeley. Lee said that as Shermaine went up the back steps, he saw Shermaine drop something into the vacant lot next door. Lee continued to pursue Shermaine, who was banging on the apartment door but was unable to gain entry. Lee arrested Shermaine on the apartment's porch landing. Lee later retrieved the object Shermaine dropped, Bradley's cell phone.

¶ 8        Shermaine testified that on March 6, 2014, he was visiting his aunt at her second-floor apartment at 4335 South Berkley. He left the apartment sometime before noon, and as he was walking to meet his mother, a man that Shermaine recognized from the neighborhood approached and offered to sell him a cell phone for $30. Shermaine said he "knew there was something to it, but [he] just bought" it anyway because he needed a phone. Shermaine continued walking. When he got to Drexel Avenue, Shermaine saw a university security police car nearby, got worried because he knew the phone was "not legit," turned around and started walking back to his aunt's apartment. He said a police squad car then drove up and almost hit him. Shermaine starting running back to his aunt's apartment building, with the police car in pursuit. Shermaine went to the back of the apartment and banged on the door, but no one opened it. Shermaine threw the phone away and was placed under arrest. Shermaine denied having gone to 46th Street and Park Avenue that day, said he had never seen Ashley Bradley before the trial, and denied stealing her cell phone. On cross- examination, Shermaine stated that he could not identify the person from whom he bought the cell phone or remember what the man was wearing but described him as about his own age, with a similar hair style and hair color.

¶ 9        The jury found Shermaine guilty on one count of robbery. At the sentencing hearing, the State argued that Shermaine should be sentenced as a habitual juvenile offender based on two

dispositions for burglary in 2012 and 2013. Certified copies of court date summaries for the two prior adjudications were entered into evidence. Defense counsel acknowledged that the trial judge was "limited in discretion in this matter," because the prerequisites were met to sentence Shermaine as a habitual juvenile offender.

¶ 10    Before sentencing Shermaine, the trial judge acknowledged he received Shermaine's social investigation report. The report stated, among other things, that in 2007, Shermaine was removed from his mother's custody for about a year in response to a report of child endangerment. Shermaine's father had numerous arrests and served time in the Department of Corrections, and Shermaine's mother was arrested for prostitution in 2012 and received a sentence of three months' supervision. Shermaine also had numerous contacts with law enforcement for various offenses, including battery, burglary, and possession of a stolen motor vehicle. In 2011, Shermaine was shot in the leg while standing on a friend's porch. Shermaine was living with his mother in Gary, Indiana, and the whereabouts of his father were unknown. The report indicated that Shermaine loves his parents but that because of frequent fights with his mother, including physical violence against her, he has lived elsewhere for periods of time.

¶ 11    The circuit court found that it was in best interest of Shermaine and the public for Shermaine to be adjudged a ward of the court and that his parents were unfit or unable to care for him. The court also found, based on Shermaine's prior dispositions, that he was a habitual juvenile offender and sentenced him to a mandatory term of commitment to the DJJ until his twenty-first birthday.

¶ 12                                                    ANALYSIS

¶ 13    Shermaine contends the habitual juvenile offender provision of the Act violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because it removes the trial court's discretion in sentencing minors who are adjudicated habitual juvenile offenders. Shermaine relies primarily on the Supreme Court decision in *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), to argue that removal of discretion violates the eighth amendment, which requires "a sentencer [to] follow a certain process–considering an offender's youth and attendant characteristics–before imposing a particular penalty." *Id.* at ___, 132 S. Ct. at 2471. Shermaine asserts that it also violates the proportionate penalties clause of the Illinois Constitution, which mandates a court consider rehabilitation in imposing a sentence.

¶ 14    As a preliminary matter, we note that the Illinois Supreme Court has held that the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution do not apply to juvenile proceedings initiated by a petition for adjudication of wardship. *In re Rodney H.*, 223 Ill. 2d 510, 520-21 (2006). The court explained that both the eighth amendment and the proportionate penalties clause apply only to the criminal process, "that is, to direct actions by the government to inflict punishment." *Id.* at 518. The court concluded that an adjudication of wardship was not criminal in nature and, therefore, was not a direct action by the State to inflict punishment within the meaning of the eighth amendment and the proportionate penalties clause. *Id.* at 520-21. But, as another panel of this court held in *In re A.P.*, 2014 IL App (1st) 140327, ¶ 13, even if the eighth amendment and

proportionate penalties clause applied to the Act, the habitual offender provision is constitutional based on current precedent.

¶ 15    Whether a statute is constitutional is a question of law, subject to *de novo* review. *People v. Kitch*, 239 Ill. 2d 452, 466 (2011). Statutes carry a strong presumption of constitutionality. *Id*. To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution. *Id*. If reasonably possible, this court will construe a statute so as to affirm its constitutionality. *People v. Johnson*, 225 Ill. 2d 573, 584 (2007). Accordingly, we will resolve any doubt as to the construction of a statute in favor of its validity. *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). A challenge to the facial validity of a statute is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances exists under which it would be valid. *Kitch*, 239 Ill. 2d at 466. A statute's invalidity in one set of circumstances does not suffice to prove its facial invalidity. *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006). "Thus, so long as there exists a situation in which a statute could be validly applied, a facial challenge must fail. [Citation.]" (Internal quotation marks omitted.) *Kitch*, 239 Ill. 2d at 466.

¶ 16                                    Eighth Amendment

¶ 17    The eighth amendment, as applied to the states through the fourteenth amendment, prohibits the imposition of cruel and unusual punishment for criminal offenses that are disproportionate in relation to the offense committed or the status of the offender. U.S. Const., amend. VIII. The eighth amendment's ban on excessive sanctions flows from the basic principle that criminal punishment should be graduated and proportioned to both the offender and the offense. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2463. To determine whether a punishment is so disproportionate as to be "cruel and unusual," a court must look beyond history to "the evolving standards of decency that mark the progress of a maturing society." (Internal quotation marks omitted.) *Id*. at ___, 132 S. Ct. at 2463.

¶ 18    Shermaine contends the habitual juvenile offender provision in section 5-815 of the Act violates the eighth amendment of the United States Constitution, because it imposes a mandatory sentence without considering whether it is disproportionate in relation to the offense committed. Section 5-815 provides:

> "(a) Definition. Any minor having been twice adjudicated a delinquent minor for offenses which, had he been prosecuted as an adult, would have been felonies under the laws of this State, and who is thereafter adjudicated a delinquent minor for a third time shall be adjudged an Habitual Juvenile Offender where:
>
> > 1. the third adjudication is for an offense occurring after adjudication on the second; and
> >
> > 2. the second adjudication was for an offense occurring after adjudication on the first; and
> >
> > 3. the third offense occurred after January 1, 1980; and
> >
> > 4. the third offense was based upon the commission of or attempted commission of the following offenses: first degree murder, second degree murder or involuntary manslaughter; criminal sexual assault or aggravated criminal sexual assault; aggravated or heinous battery involving permanent disability or

- 5 -

disfigurement or great bodily harm to the victim; burglary of a home or other residence intended for use as a temporary or permanent dwelling place for human beings; home invasion; robbery or armed robbery; or aggravated arson.

Nothing in this section shall preclude the State's Attorney from seeking to prosecute a minor as an adult as an alternative to prosecution as an habitual juvenile offender.

\* \* \*

(f) Disposition. If the court finds that the prerequisites establishes in subsection (a) of this Section have been proven, it shall adjudicate the minor an Habitual Juvenile Offender and commit him to the Department of Juvenile Justice until his 21st birthday, without possibility of parole, furlough, or non-emergency authorized absence. However, the minor shall be entitled to earn one day of good conduct credit for each day served as reductions against the period of his confinement. Such good conduct credits shall be earned or revoked according to the procedures applicable to the allowance and revocation of good conduct credit for adult prisoners serving determinate sentences for felonies." 705 ILCS 405/5-815 (West 2012).

¶ 19    The Illinois Supreme Court has held that the mandatory sentencing provision of the Act does not violate the eighth amendment. *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67 (1980). Relying on the United States Supreme Court decision in *Rummel v. Estelle*, 445 U.S. 263 (1980), which upheld a Texas recidivist statute that prescribed life imprisonment after conviction of three felonies, the Illinois Supreme Court in *Chrastka* held that sentencing a habitual juvenile offender to a mandatory minimum sentence of commitment until the age of 21 years did not violate the eighth amendment. *Chrastka*, 83 Ill. 2d at 81-82. Specifically, the court concluded that "[s]tate legislatures have traditionally been allowed wide latitude in setting penalties for State crimes [citation], and we do not believe that the disposition authorized here rises to the level of cruel and unusual punishment by any stretch of the imagination." *Chrastka*, 83 Ill. 2d at 81-82.

¶ 20    Shermaine acknowledges the holding in *Chrastka*, as well as its recent application in *In re A.P.*, 2014 IL App (1st) 140327 (holding that habitual juvenile offender provision of the Juvenile Court Act did not violate the eighth amendment or the proportionate penalties clause of the Illinois Constitution), but contends that *Chrastka* and *Rummel*, on which it relies, are "out of step" with current case law and should be reconsidered in light of recent United States Supreme Court decisions recognizing expansive eighth amendment protections for minors found guilty of crimes.

¶ 21    In a series of decisions over the past decade, the United States Supreme Court has determined that the eighth amendment's proscription against cruel and unusual punishment prevents imposition of the death penalty for offenses committed by juveniles (*Roper v. Simmons*, 543 U.S. 551, 574-75 (2005)), a sentence of life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses (*Graham v. Florida*, 560 U.S. 48, 74-75 (2010)), and a mandatory sentence of life without the possibility of parole for homicide committed by a juvenile (*Miller*, 567 U.S. at \_\_\_, 132 S. Ct. at 2469). In each of these cases, the Supreme Court relied on the results of scientific and sociological studies

documenting the fundamental differences between juvenile and adult offenders convicted of the same crimes. As summarized by the Court in *Miller*:

> "First, children have a ' "lack of maturity and an underdeveloped sense of responsibility," ' leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S. at 569, 125 S. Ct. 1183. Second, children 'are more vulnerable ... to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity].' *Id.* at 570, 125 S. Ct. 1183." *Miller*, 567 U.S. at ___, 132 S. Ct. at 2464.

¶ 22    *Miller*, on which Shermaine primarily relies, involved two 14-year-olds convicted of murder and sentenced to life imprisonment without the possibility of parole. *Miller*, 567 U.S. at ___, 132 S. Ct. at 2460. In reaching the conclusion that mandatory life sentences without the possibility of parole for juvenile offenders violated the eighth amendment, the Supreme Court relied on a confluence of "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty" (*id.* at ___, 132 S. Ct. at 2463) and prohibitions on "mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Id.* at ___, 132 S. Ct. at 2463-64.

¶ 23    The Court emphasized that a mandatory life sentence without parole for a juvenile did not allow for consideration of the offender's age and "its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences. *Id.* at ___, 132 S. Ct. at 2468. The Court concluded that "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id.* at ___, 132 S. Ct. at 2468.

¶ 24    Shermaine contends that like the mandatory life sentence in *Miller*, the habitual juvenile offender provision of the Act violates the eighth amendment because it only allows one sentence–incarceration until the juvenile's twenty-first birthday–and precludes the court from considering other factors, including the offender's youth, his or her potential for rehabilitation, the circumstances of the offense, and his or her family environment. Shermaine asserts that the Court's holding in *Miller* supports a finding that a mandatory sentencing provision like the one applied to habitual juvenile offenders under the Act violates the eighth amendment.

¶ 25    *Miller*, however, is factually distinguishable and does not support deviating from precedent established in *Chrastka*, which, as an appellate court, we are required to follow. In *Miller* and the cases it relies on, *Roper*, and *Graham*, the defendants were under the age of 18, but were tried as adults in the criminal system. Conversely, Shermaine, who was also under the age of 18, was sentenced as a juvenile under the Act. Further, the *Miller* Court did not hold that the eighth amendment prohibited *any* mandatory penalties but, rather, only mandatory life sentences. While Shermaine was given a mandatory sentence of commitment until the age of 21, that sentence is far less egregious than the sentence of life in prison without the possibility of parole that the trial court gave to the *Miller* defendant.

¶ 26    Like the respondents in *Chrastka*, Shermaine was sentenced as a habitual juvenile offender to a mandatory minimum sentence of commitment until he is 21 years old as a result of

recidivism. As an appellate court, we are required to follow supreme court precedent on an issue "unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court." *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23. Although the United States Supreme Court has in recent years addressed the eighth amendment rights of juveniles tried as adults, it has not similarly addressed the rights of juveniles like Shermaine who are tried in the juvenile court system. Further, the Illinois Supreme Court has not revisited its holding in *Chrastka*. Because it is still applicable, we must follow the holding in *Chrastka* and find that Shermaine's commitment to the DJJ until the age of 21 does not violate the eighth amendment.

¶ 27                                    Proportionate Penalties Clause

¶ 28        Shermaine contends that even if the habitual juvenile offender provision of the Act does not violate the eighth amendment, the court should still find a violation of the proportionate penalties clause of the Illinois Constitution. The proportionate penalties clause, which is similar to but not identical with the eighth amendment, provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The second requirement of the clause, that penalties must have the objective of restoring the offender to useful citizenship, was added to the 1970 Constitution. *People v. Clemons*, 2012 IL 107821, ¶ 39. Citing *Clemons*, 2012 IL 107821, Shermaine contends that by emphasizing rehabilitation, Illinois's proportionate penalties clause provides greater protection than the eighth amendment. In *Clemons*, our supreme court stated, "The convention record indicates that the framers intended, with this additional language, to provide a limitation on penalties beyond those afforded by the eighth amendment." *Id.* ¶ 39.

¶ 29        Shermaine relies on *People v. Miller*, 202 Ill. 2d 328 (2002), to contend that Illinois emphasizes rehabilitation and provides greater protection to juvenile offenders than the federal constitution. In *Miller*, the defendant, a 15-year-old, was convicted of two counts of first degree murder on an accountability theory when he served as a lookout in a shooting that resulted in two murders. *Id.* at 330-31. The convergence of three statutes mandated a natural life sentence, but the trial court refused to sentence the 15-year-old offender to life in prison and instead sentenced him to 50 years in prison. *Id.* at 343. Our supreme court affirmed, holding that the multiple-murder sentencing statute, when converged with the automatic transfer statute and the accountability statute, was unconstitutional under the eighth amendment and the proportionate penalties clause of the Illinois Constitution when applied to a 15-year-old offender convicted of multiple murders under a theory of accountability, because the sentence "eliminate[d] the court's ability" to consider the defendant's "age or degree of participation [in the crime]." *Id.* at 342. The court stated that "[o]ur decision is consistent with the long-standing distinction made in this state between adult and juvenile offenders," noting that "Illinois led the nation with our policy towards the treatment of juveniles in first forming the juvenile court, and, traditionally, as a society we have recognized that young defendants have greater rehabilitative potential." *Id.* at 341-42.

¶ 30        *Miller* is distinguishable, however, and thus Shermaine's reliance on it to support his claim of a violation of the proportionate penalties clause is misplaced. First, *Miller* does not address

the habitual juvenile offender provision of the Act. Unlike the defendant in *Miller*, Shermaine was not tried as an adult and was not subject to a natural life sentence without the possibility of parole.

¶ 31 More importantly, however, is that despite the statement in *Clemons* that the proportionate penalties clause "provide[s] a limitation on penalties beyond those afforded by the eighth amendment," our supreme court has held, in numerous cases, both before and after *Clemons*, that the Illinois proportionate penalties clause is co-extensive with the cruel and unusual punishment clause. *People v. Patterson*, 2014 IL 115102, ¶ 106; *In re Rodney H.*, 223 Ill. 2d at 518. Thus, because in *Chrastka*, our supreme court held that sentencing a habitual juvenile offender to a mandatory minimum sentence of commitment until the age of 21 years did not violate the eighth amendment and the proportionate penalties clause provides co-extensive protections, we also reject Shermaine's challenge to the habitual juvenile offender provision under our state constitution.

¶ 32 As an appellate court, we are required to follow supreme court precedent on an issue "unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court." *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23. Unless and until our supreme court decides to revisit its holding in *Chrastka*, we must follow its conclusion and affirm the judgment of the circuit court. We note, however, that the mandatory sentencing provision of the Act, which removes all discretion of the trial court in sentencing certain repeat juvenile offenders, is ripe for reconsideration. Illinois has been a national leader in the field of juvenile justice since the Illinois legislature enacted "An Act to regulate the treatment and control of dependent, neglected and delinquent children" (1899 Ill. Laws 131)–or the Illinois Juvenile Court Act–on July 1, 1899. The first juvenile court in the country was located in Chicago across the street from Hull House, an effective and prominent social service agency founded by social reformer Jane Addams. It was Addams who rallied the movement for a separate juvenile justice system, which would remove children from being tried and imprisoned by the adult criminal system. And it was Addams who cautioned, "social advance depends as much on the process through which it is secured as upon the result itself." Jane Addams, Peace and Bread in Time of War 133 (1922).

¶ 33 During the intervening decades, however, the pendulum has swung back and forth on the legal system's handling of juvenile offenders as adults. Recent research on the effect that the unique qualities and characteristics of youth may have on juveniles' judgment and actions warrants reconsideration of some provisions of the Act, particularly those that remove or reduce the trial judge's discretion in considering some of those qualities and characteristics in sentencing a juvenile. We must ask ourselves whether precluding a trial judge's discretion wrongly deprives juveniles of what Justice Kennedy's majority opinion in *Graham v. Florida*, 560 U.S. at 79, called "the opportunity to achieve maturity of judgment and self-recognition of human worth and potential."

¶ 34 As our supreme court recently noted in *People v. Patterson*, 2014 IL 115102, in discussing automatic transfers of juveniles to adult court, "[w]hile modern research has recognized the effect that the unique qualities and characteristics of youth may have on juveniles' judgment and actions [citation], the automatic transfer provision does not. Indeed, the mandatory nature of that statute denies this reality." *Patterson*, 2014 IL 115102, ¶ 111. The court "strongly

urge[d] the General Assembly to review the automatic transfer provision based on the current scientific and sociological evidence indicating a need for the exercise of judicial discretion in determining the appropriate setting for the proceeding in these juvenile cases." *Id*. We suggest that similar reconsideration is necessary in the context of the Act's habitual offender provision to ensure preservation of the fundamental purpose of juvenile proceedings–the child's rehabilitation, treatment, and welfare.

¶ 35        Affirmed.