# Illinois Official Reports

## Appellate Court

*In re Dave L.*, 2017 IL App (1st) 170152

| | |
|---|---|
| Appellate Court Caption | *In re* DAVE L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Dave L., Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0152 |
| Filed<br>Rehearing denied | June 15, 2017<br>July 17, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-JD-01958; the Hon. Stuart Lubin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Roxanna A. Mason, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Presiding Justice Ellis and Justice Howse concurred in the judgment and opinion. |

¶ 1    Respondent Dave L., born July 20, 1999, was charged in a petition for adjudication of wardship with two counts of aggravated unlawful use of a weapon (AUUW) based on his possession of a handgun without a firearm owner's identification (FOID) card and his age. Based on respondent's previous adjudications of delinquency for armed robbery and AUUW and that his current offense of AUUW was a Class 2 felony, the State filed notice of its intent to prosecute respondent as a violent juvenile offender (VJO) pursuant to section 5-820 of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5-820 (West 2014)). After a jury trial in Cook County circuit court, respondent was adjudicated delinquent and subsequently sentenced as a VJO under the Act to a mandatory term of confinement until age 21.

¶ 2    Respondent appeals, arguing that (1) he was not eligible for sentencing as a VJO under the Act because his AUUW charge would not have been a Class 2 felony if he had been prosecuted as an adult and (2) the VJO statute violates the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution because it removes the trial court's discretion in sentencing.

¶ 3    Respondent does not challenge the sufficiency of the evidence, so we will discuss the facts only to the extent necessary to understand the current appeal. The following evidence was presented at respondent's December 2016 jury trial.

¶ 4    Officer Jeffrey Salvetti testified that he was employed as a Chicago police officer. On August 30, 2016, he was working with his partners, officers Erik Seng and Ernesto Amparan, in an unmarked police vehicle. At approximately 11:40 p.m., he was on patrol with his partners near North Pulaski Road and West Grand Avenue. While on the 1500 block of North Pulaski Road, the officer saw respondent approximately half a block from the vehicle. Officer Salvetti identified respondent in court. He stated that the vehicle continued north toward respondent.

¶ 5    Officer Salvetti observed respondent "making hand gestures at passing vehicles." The officer stated that he saw respondent look toward the officers' vehicle and then "immediately reached down, grabbed the right side of his waistband and turned his back" to the officer. Respondent grabbed the front side of the waistband with his right hand. As the officers' vehicle pulled up alongside respondent, he turned and began running southbound on Pulaski Road. Officer Salvetti stated that respondent's right hand remained on his waistband. Officer Salvetti then exited the vehicle and began to pursue respondent.

¶ 6    Respondent continued south on Pulaski Road, then made a left eastbound onto West LeMoyne Street, and then turned into a northbound alley east of Pulaski Road. The officer briefly lost sight of respondent when he turned the corner onto LeMoyne Street and when he turned into the alley. When the officer turned into the alley, he was approximately one yard length away from respondent. He observed respondent running northbound and saw respondent's "right hand was now extended away from his body, and [he] saw an object leaving [respondent's] hand." Officer Salvetti testified that the object was a handgun. Officer Salvetti continued to pursue respondent and caught him within 10 to 15 seconds.

¶ 7    Officer Salvetti's partner, Officer Amparan, placed respondent into custody. Officer Salvetti proceeded to the area where he observed respondent throwing the handgun. He climbed a fence into the yard where he saw the handgun thrown and saw the handgun lying on a concrete slab in the yard. He testified that it was a Herrington & Richardson LR 22 revolver.

When he recovered the handgun, he cleared the eight live rounds inside the gun. Officer Salvetti stated that he recovered the handgun within 30 seconds after respondent threw it and no one else was present at the time.

¶ 8 Officers Seng and Amparan also testified at the trial and corroborated Officer Salvetti's testimony.

¶ 9 Bob Radmacher testified that he was employed at the Illinois State Police firearm services bureau and was the supervisor of the application processing unit. He stated that he searched the FOID card database, and as of September 14, 2016, respondent had never applied for or been issued a FOID card.

¶ 10 The State then rested. Respondent moved for a directed finding, which the trial court denied. Respondent rested without presenting any additional evidence. Following deliberations, the jury found respondent guilty of AUUW. Respondent filed a motion for a new trial, which the court denied. The case proceeded to respondent's dispositional hearing.

¶ 11 At the dispositional hearing, the trial court heard evidence that respondent was 17 years old, had been detained five times, and has had one juvenile arrest warrant. Respondent has been committed to the Department of Juvenile Justice (DJJ) twice. The prosecutor disclosed that under case number 13 JD 1077, respondent was found delinquent of AUUW and sentenced to probation. In case number 14 JD 653, respondent was found delinquent of AUUW and sentenced to the DJJ. Upon release, respondent was subsequently charged with theft in case number 15 JD 1333, which the State dismissed. Respondent was also charged with armed robbery and intimidation of a witness in case number 15 JD 1387 and again sentenced to the DJJ. Based on respondent's background, the State asked the trial court to find respondent a VJO and commit him to the DJJ until age 21.

¶ 12 The trial court then committed respondent to the DJJ until his twenty-first birthday. The court observed:

> "You know, I really don't really like statutes that take away my discretion. But in this case with this particular person standing in front of me, I can't really argue with it. There's a finding of inability and best interest. Commit to the Department of Juvenile Justice, aggravated unlawful use of a weapon, having previously been convicted of the [offenses] the State has tendered in the certified copies."

¶ 13 This appeal followed.

¶ 14 First, respondent argues that he was not eligible for sentencing as a VJO because his AUUW conviction would not have been a Class 2 felony if he were tried as an adult since his prior adjudications for AUUW would not have been admissible. According to respondent, his AUUW charge would have remained a Class 4 felony. Respondent admits that he did not challenge the applicability of the VJO statute to his conviction in the trial court, but asks this court to review the issue under the plain error doctrine.

¶ 15 To preserve an issue for review, respondent must object both at trial and in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Failure to do so operates as a forfeiture as to that issue on appeal. *People v. Ward*, 154 Ill. 2d 272, 293 (1992). Illinois Supreme Court Rule 615(a) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a). The plain error rule "allows a reviewing court to consider

unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)). However, the plain error rule "is not 'a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court.' " *Herron*, 215 Ill. 2d at 177 (quoting *People v. Precup*, 73 Ill. 2d 7, 16 (1978)). Rather, the plain error rule is a narrow and limited exception to the general rules of forfeiture. *Id.*

¶ 16 Respondent carries the burden of persuasion under both prongs of the plain error rule. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). Respondent asserts that this first alleged error would qualify as a plain error under the second prong. However, "[t]he first step of plain-error review is to determine whether any error occurred." *Lewis*, 234 Ill. 2d at 43.

¶ 17 A minor is classified as a VJO under section 5-820 of the Act. Section 5-820(a) details the requirements for a VJO classification as follows:

> "A minor having been previously adjudicated a delinquent minor for an offense which, had he or she been prosecuted as an adult, would have been a Class 2 or greater felony involving the use or threat of physical force or violence against an individual or a Class 2 or greater felony for which an element of the offense is possession or use of a firearm, and who is thereafter adjudicated a delinquent minor for a second time for any of those offenses shall be adjudicated a Violent Juvenile Offender if:
>
>> (1) The second adjudication is for an offense occurring after adjudication on the first; and
>>
>> (2) The second offense occurred on or after January 1, 1995." 705 ILCS 405/5-820(a) (West 2014).

¶ 18 Respondent does not contest that he has the requisite prior Class 2 or greater felony but asserts that the AUUW charge in the instant case would not have been prosecuted as a Class 2 or greater felony if he had been tried as an adult. Respondent focuses on section 24-1.6(d)(1) of the AUUW statute, which provides:

> "Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years." 720 ILCS 5/24-1.6(d)(1) (West 2014).

¶ 19 Respondent relies on *People v. Burns*, 2015 IL 117387, and contends that the penalty enhancement is not an element of the offense. According to respondent, the *Burns* court explicitly rejected the principle that a subsequent AUUW could be considered a Class 2 felony.

¶ 20 In *Burns*, the supreme court clarified its prior holding in *People v. Aguilar*, 2013 IL 112116. Section 24-1.6(a)(1), (a)(3)(A) of the AUUW statute (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), is facially unconstitutional because it violates the right to keep and bear arms (*Aguilar*, 2013 IL 112116, ¶ 21) since, on its face, the "statutory provision constitutes a flat ban on carrying ready-to-use guns outside the home." *Burns*, 2015 IL 117387, ¶ 25. The *Burns* court addressed its prior holding in *Aguilar*.

"Admittedly, in *Aguilar*, we specifically limited our holding of facial invalidity to a so-called 'Class 4 form' of the offense. See *Aguilar*, 2013 IL 112116, ¶ 21. However, we now acknowledge that our reference in *Aguilar* to a 'Class 4 form' of the offense was inappropriate. No such offense exists. There is no 'Class 4 form' or 'Class 2 form' of AUUW." *Id.* ¶ 22.

¶ 21    The *Burns* court observed that under subsection (d), "the legislature increases the penalty for any violation of the statute from a Class 4 felony to a Class 2 felony if the person found guilty of committing the offense is a convicted felon. This sentencing provision does not create separate and distinct offenses of aggravated unlawful use of a weapon. Nor does making the sentence for a violation of the statute a Class 4 felony or a Class 2 felony transform the offense of AUUW into a different 'form.' " *Id.* ¶ 24. The *Burns* language relied on by respondent concludes that paragraph. "The penalty enhancements in subsection (d) are not elements of the offense. They do not come into play until after the defendant is found guilty." *Id.*

¶ 22    However, respondent fails to explain how this language affects his case. Respondent makes a single conclusory statement that he was not adjudicated guilty of an offense that would have been prosecuted as a Class 2 felony if he were charged as an adult. Illinois Supreme Court Rule 341(h)(7) requires that an appellant's brief provide this court with an argument "which shall contain the contentions of the appellant and reasons therefor" (Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016)). This court is not a repository into which an appellant may foist the burden of argument and research. *People v. Jacobs*, 405 Ill. App. 3d 210, 218 (2010). It is neither the function nor the obligation of this court to act as an advocate or search the record for error. *Id.* Respondent's conclusory statement, without any supporting analysis, is insufficient to satisfy Rule 341(h)(7), and his claim is, therefore, forfeited.

¶ 23    Still, we find respondent's argument to be without merit. First, respondent's reliance on *Burns* is misplaced. As we discussed above, the holding in *Burns* clarified that section 24-1.6(a)(1), (a)(3)(A), which provided that a person committed the offense of aggravated unlawful use of a weapon when he or she knowingly carries on or about his or her person or in any vehicle, any pistol, revolver, stun gun, taser or other firearm, when the firearm possessed is uncased, loaded, and immediately accessible at the time of the offense (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)), was facially unconstitutional without limitation. *Burns*, 2015 IL 117387, ¶ 25. Here, the petition for adjudication of wardship charged respondent for violating section 24-1.6(a)(1), (a)(3)(C) for failure to possess a valid FOID card and for violating section 24-1.6(a)(1), (a)(3)(I) for possessing a firearm while under the age of 21 and not engaged in lawful hunting activities. The Illinois Supreme Court has explicitly found that subsections of the AUUW are severable from the subsection unconstitutional under *Aguilar*. *People v. Mosley*, 2015 IL 115872, ¶ 31. The *Mosley* court went on to hold that AUUW based on failure to possess a valid FOID card (720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2014)), and possession of a firearm by an individual under age 21 (720 ILCS 5/24-1.6(a)(1), (a)(3)(I) (West 2014)) are constitutional and remain valid and enforceable. *Mosley*, 2015 IL 115872, ¶¶ 36-37. Thus, *Burns* is applicable only to the subsection of the AUUW statute found unconstitutional under *Aguilar*, subsection (a)(1), (a)(3)(A). As with any other adult similarly charged, respondent was charged under constitutional sections of the AUUW statute that remain viable; we reject *Burns*'s applicability in this case.

¶ 24    Respondent's argument that there is no inherent Class 2 felony charge for AUUW is also incorrect as a matter of law. If he had been prosecuted as an adult, he would have been charged

with a Class 2 felony at the initiation of charges. Under section 111-3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c) (West 2014)), the State would have been required to give notice of its intention to enhance his sentence based on his prior AUUW convictions in the charging instrument.

¶ 25     Section 111-3(c) provides:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. However, the fact of such prior conviction and the State's intention to seek an enhanced sentence are not elements of the offense and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during such trial. For the purposes of this Section, 'enhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense set forth in Section 5-4.5-10 of the Unified Code of Corrections (730 ILCS 5/5-4.5-10); it does not include an increase in the sentence applied within the same level of classification of offense." 725 ILCS 5/111-3(c) (West 2014).

¶ 26     "In construing the language of section 111-3(c), it is clear that the notice provision applies only when the prior conviction that would enhance the sentence is not already an element of the offense." *People v. Easley*, 2014 IL 115581, ¶ 19. Thus, notice under section 111-3(c) would have been required if respondent had been tried as an adult for AUUW where the State sought to enhance his sentence to a Class 2 felony based on his prior AUUW convictions.

¶ 27     Additionally, we point out that the petition for adjudication of wardship filed against respondent did include notice of "this being a Class 2 felony as the minor has previously been adjudicated delinquent" for AUUW. Therefore, the charging instrument included notice that the State was prosecuting a Class 2 offense and seeking an enhanced sentence in respondent's case, as it would have been required in criminal court. For these reasons, respondent's argument fails.

¶ 28     Respondent further argues that, even if his current charge of AUUW would be considered a Class 2 felony, his prior AUUW convictions would not have been admissible if he were prosecuted as an adult. Section 5-150(1)(b) of the Act allows for evidence of prior adjudications to be used "in criminal proceedings when the court is to determine the amount of bail, fitness of the defendant or in sentencing under the Unified Code of Corrections." 705 ILCS 405/5-150(1)(b) (West 2014). According to respondent, since the section 24-1.6(d)(1) sentencing enhancement for AUUW falls under the Criminal Code of 2012 and not the Unified Code of Corrections, his prior adjudications would not have been admissible. We are not persuaded.

¶ 29     While section 24-1.6(d)(1) designates the degree of felonies possible for AUUW convictions, the authority to impose criminal sentences is governed by the Unified Code of Corrections. See 730 ILCS 5/5-1-1 *et seq.* (West 2014). For example, section 5-4-1 governs the conduct of a sentencing hearing. 730 ILCS 5/5-4-1 (West 2014). While section 24-1.6(d)(1) stated that "a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years" (720 ILCS 5/24-1.6(d)(1) (West 2014)), this language mirrored the Class 2 felony sentencing range under the Unified Code of Corrections. Under the Unified Code of Corrections, for a Class 2 felony, "[t]he sentence of imprisonment shall be a determinate sentence of not less than 3 years

and not more than 7 years." 730 ILCS 5/5-4.5-35(a) (West 2014). At a sentencing hearing for an adult prosecution, respondent's juvenile adjudications for two prior AUUW convictions would have properly been admitted under section 5-150(1)(b) of the Act to establish his eligibility for a Class 2 felony sentence under section 5-4.5-35(a) of the Unified Code of Corrections.

¶ 30 Since we have found that respondent's prior adjudications would have been admissible if he had been tried as an adult and that he subsequently would have been convicted and sentenced for a Class 2 felony, the trial court properly adjudicated respondent a VJO under section 5-820 of the Act. Because we have found no error in the proceedings, respondent's plain error argument fails.

¶ 31 Further, respondent asserts that his trial counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984), for failing to object to the trial court's finding that respondent was a VJO. However, since we have concluded that respondent was properly subject to the VJO statute, no claim of ineffective assistance of counsel can stand. Accordingly, this claim is without merit.

¶ 32 Next, respondent contends that the VJO statute is facially unconstitutional because it violates the eighth amendment (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Respondent bases the weight of his argument on the recent line of United States Supreme Court cases addressing the differences in imposing criminal punishments on minors.

¶ 33 Respondent relies on *Miller v. Alabama*, 567 U.S. 460 (2012), *Graham v. Florida*, 560 U.S. 48 (2010), and *Roper v. Simmons*, 543 U.S. 551 (2005), to contend that these cases hold fundamental differences between juvenile and adult minds make children under 18 less culpable than adults for the same offenses and, thus, asserting that additional constitutional protections for these juvenile offenders are required. The Supreme Court held in *Roper* that the eighth amendment forbids the death penalty for juvenile offenders, finding that they "cannot with reliability be classified among the worst offenders." *Roper*, 543 U.S. at 569. In *Graham*, the Supreme Court held that the eighth amendment prohibits a sentence of life without the possibility of parole for juveniles who did not commit homicide. *Graham*, 560 U.S. at 74-75. Finally, in *Miller*, the Supreme Court held that the eighth amendment prohibits a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders, including those convicted of homicide, finding that a judge must first have the opportunity to examine the circumstances involved. *Miller*, 567 U.S. at 479-80.

¶ 34 According to respondent, the mandatory sentence of incarceration at the DJJ until his twenty-first birthday violates the eighth amendment under *Miller* because it removed the trial court's discretion to consider a juvenile offender's youth and attendant characteristics before imposing the penalty.

¶ 35 The VJO statute states, in relevant part:

"If the court finds that the prerequisites established in subsection (a) of this Section have been proven, it *shall* adjudicate the minor a Violent Juvenile Offender and commit the minor to the Department of Juvenile Justice until his or her 21st birthday, without possibility of aftercare release, furlough, or non-emergency authorized absence." (Emphasis added.) 705 ILCS 405/5-820(f) (West 2014).

¶ 36    Initially, we observe that our supreme court has determined that the eighth amendment and the proportionate penalties clause do not apply to juvenile proceedings initiated by a petition for an adjudication of wardship. *In re Rodney H.*, 223 Ill. 2d 510, 521 (2006); *In re A.P.*, 2014 IL App (1st) 140327, ¶ 13. The court reasoned that both the eighth amendment and the proportionate penalties clause apply only to the criminal process, "that is, to direct actions by the government to inflict punishment." *Rodney H.*, 223 Ill. 2d at 518. The court concluded that proceedings under the Act are not criminal in nature and that an adjudication of wardship is not a direct action by the State to inflict punishment within the meaning of the eighth amendment and proportionate penalties clause. *Id.* However, even if the eighth amendment and proportionate penalties clause applied to the Act, we conclude that the VJO statute is constitutional.

¶ 37    "The constitutionality of a statute is a question of law that we review *de novo*. All statutes are presumed to be constitutional. The party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must construe a statute so as to uphold its constitutionality, if reasonably possible." *People v. Minnis*, 2016 IL 119563, ¶ 21. "Successfully making a facial challenge to a statute's constitutionality is extremely difficult, requiring a showing that the statute would be invalid under *any* imaginable set of circumstances. The invalidity of the statute in one particular set of circumstances is insufficient to prove its facial invalidity." (Emphasis in original.) *In re M.T.*, 221 Ill. 2d 517, 536-37 (2006).

¶ 38    The eighth amendment, as applied to the states through the fourteenth amendment, prohibits the imposition of cruel and unusual punishment for criminal offenses that are disproportionate in relation to the offense committed or the status of the offender. U.S. Const., amend. VIII. The eighth amendment's ban on excessive sanctions flows from the basic principle that criminal punishment should be graduated and proportioned to both the offender and the offense. *Miller*, 567 U.S. at 469.

¶ 39    Respondent's arguments have already been considered and rejected by several recent decisions of this court. See *In re Deshawn G.*, 2015 IL App (1st) 143316; *In re Shermaine S.*, 2015 IL App (1st) 142421; *In re Isaiah D.*, 2015 IL App (1st) 143507; *In re A.P.*, 2014 IL App (1st) 140327. We note that *Deshawn G.* and *Isaiah D.* reviewed the VJO statute under an eighth amendment and proportionate penalties challenge while the remaining cases as well as *Isaiah D.* considered the same challenge of a similar statute under the Act for habitual juvenile offenders (HJO). "The Juvenile Court Act provisions regarding HJO and VJO status require, in substantially identical language, that once the court has found that the predicate offenses for HJO or VJO status have been proven, the court shall commit the minor to the [DJJ] until his 21st birthday. 705 ILCS 405/5-815, 5-820 (West 2012)." *Isaiah D.*, 2015 IL App (1st) 143507, ¶ 51. Thus, the reasoning in cases reviewing the HJO statute is equally applicable to the instant constitutional challenge to the VJO statute.

¶ 40    The prior cases have consistently held that the Illinois Supreme Court's decision in *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67 (1980), controls our analysis.

>     "The Illinois Supreme Court has previously held that the habitual juvenile offender provision of the Act is constitutional. *People ex rel. Carey v. Chrastka*, 83 Ill. 2d 67, 78-80 (1980). More specifically, relying on the United States Supreme Court's holding in *Rummel v. Estelle*, 445 U.S. 263 (1980), the Illinois Supreme Court in *Chrastka* found that 'state legislatures have traditionally been allowed wide latitude in setting

penalties for State crimes [citation], and we do not believe that the disposition authorized here rises to the level of cruel and unusual punishment by any stretch of the imagination.' *Chrastka*, 83 Ill. 2d at 81-82; see also *Rummel*, 445 U.S. at 280-81, 284-85 (finding that the imposition of a life sentence with a possibility of parole under a recidivist statute upon a defendant convicted, successively, of fraudulent use of a credit card, passing a forged check, and obtaining money by false pretenses was not a cruel and unusual punishment)." *A.P.*, 2014 IL App (1st) 140327, ¶ 18.

See also *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 19; *Isaiah D.*, 2015 IL App (1st) 143507, ¶¶ 55-56; *Deshawn G.*, 2015 IL App (1st) 143316, ¶ 53.

¶ 41 Respondent recognizes the decision in *Chrastka* but asserts that the foundation for its holding has been "swept away" and is no longer valid. However, this argument has also been rejected by our recent decisions.

"Respondent acknowledges our supreme court's holding in *Chrastka* but argues that it is 'ripe for being overturned' in light of subsequent United States Supreme Court precedent. Particularly, respondent relies on *Miller* ***, which held that imposition of mandatory life sentences without the possibility of parole for persons under the age of 18 at the time of their crimes violates the eighth amendment. *Id*. at [465]___, 132 S. Ct. at 2460. However, we have specifically rejected a juvenile's reliance on *Miller* to challenge the continuing validity of *Chrastka*. See *Shermaine S.*, 2015 IL App (1st) 142421, ¶¶ 21-25; *A.P.*, 2014 IL App (1st) 140327, ¶¶ 18-22. In particular, we have found that *Miller* is distinguishable because it involved defendants who committed crimes as juveniles but were charged and convicted in the adult court systems. *Id*. ¶ 22. Moreover, we have noted that *Miller* 'did not hold that the eighth amendment prohibited *any* mandatory penalties for juveniles, only mandatory natural life sentences without the possibility of parole.' (Emphasis in original.) *Id.* Thus, we have concluded that *Miller* is 'factually distinguishable and does not support deviating from precedent established in *Chrastka*, which, as an appellate court, we are required to follow.' *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 25. In this case, respondent urges that both *A.P.* and *Shermaine S.* were wrongly decided, but raises no new argument to warrant departing from those decisions. Thus, we again conclude that *Chrastka* remains binding and reject respondent's eighth amendment challenge to the HJO and VJO mandatory sentencing provisions." *Isaiah D.*, 2015 IL App (1st) 143507, ¶ 56.

See also *Deshawn G.*, 2015 IL App (1st) 143316, ¶ 53 (following *Isaiah D.*).

¶ 42 Thus, respondent's challenge of the VJO statute as violative of the eighth amendment is without merit. Respondent asserts that if this court determines that the eighth amendment is not implicated by the VJO statute, then we should find that the VJO statute violates the proportionate penalties clause of the Illinois Constitution. This argument has also been considered and rejected in previous cases.

¶ 43 Article I, section 11, of the Illinois Constitution, commonly known as the proportionate penalties clause, provides in pertinent part that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. "[T]he Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause ***." *People v. Patterson*, 2014 IL 115102, ¶ 106 (citing *Rodney H.*, 223 Ill. 2d at 518).

"Under that proposition, our rejection of respondent's eighth amendment challenge pursuant to our supreme court's decision in *Chrastka* would likewise compel rejection of his proportionate penalties argument. In fact, we recently applied that logic in rejecting a proportionate penalties challenge: '[B]ecause in *Chrastka*, our supreme court held that sentencing a habitual juvenile offender to a mandatory minimum sentence *** did not violate the eighth amendment and the proportionate penalties clause provides co-extensive protections, we also reject Shermaine's challenge to the habitual juvenile offender provision under our state constitution.' " *Isaiah D.*, 2015 IL App (1st) 143507, ¶ 58 (quoting *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 31).

¶ 44    Respondent argues that this holding in *Patterson* is an "outlier" and that the holding in *People v. Miller*, 202 Ill. 2d 328 (2002), finding that a mandatory sentence for a juvenile tried as an adult violated the proportionate penalties clause, is instructive in this case. Again, the court in *Isaiah D.* reviewed this same argument.

"Respondent urges that our supreme court's statement that the proportionate penalties clause is 'co-extensive' with the eighth amendment (*Patterson*, 2014 IL 115102, ¶ 106) should be disregarded as an 'outlier' that cannot be reconciled with a long history of 'cases recognizing the unique importance of rehabilitation, and the rehabilitation of youth in particular.' However, even before our supreme court decided *Patterson*, we had independently concluded that the mandatory sentencing provision of the HJO statute did not violate the proportionate penalties clause. See *A.P.*, 2014 IL App (1st) 140327, ¶¶ 16-24. In *A.P.*, we reasoned that '[t]he legislature is entitled to find that, in the case of a recidivist, violent offender such as respondent, there are no mitigating circumstances to allow for a lesser penalty.' *Id.* ¶ 23 (noting our supreme court's statement in *People v. Taylor*, 102 Ill. 2d 201, 206 (1984), that '[t]he rehabilitative objective of [the proportionate penalties clause] should not and does not prevent the legislature from fixing mandatory minimum penalties where it has been determined that no set of mitigating circumstances' would justify a lesser sentence).

We note that respondent's proportionate penalties challenge relies heavily on our supreme court's decision in *People v. Miller*, 202 Ill. 2d 328 (2002), which recognized the 'long-standing distinction made in this state between adult and juvenile offenders' and that 'young defendants have greater rehabilitative potential.' *Id.* at 341-42. *Miller* held that a mandatory life sentence was unconstitutional when applied to a 15-year-old offender convicted on two counts of first degree murder on an accountability theory, as it eliminated the sentencing court's ability to consider factors such as the defendant's age or degree of participation in the crime. *Id.* at 342. Nonetheless, in *Shermaine S.* we held that *Miller* is distinguishable from the HJO sentencing provision, and that 'reliance on [*Miller*] to support [a] claim of a violation of the proportionate penalties clause is misplaced.' *Shermaine S.*, 2015 IL App (1st) 142421, ¶ 30 (noting that the defendant in *Miller* was tried as an adult and was subject to a natural life sentence). As we concluded in *Shermaine S.*, our supreme court's decision in *Miller* is distinguishable from respondent's case and thus does not undermine the constitutionality of the HJO and VJO sentencing provisions.

We recognize that, although our decisions in *A.P.* and *Shermaine S.* concerned challenges only to the HJO mandatory sentencing provision in section 5-815 of the Juvenile Court Act, respondent here challenges both that provision and its VJO

counterpart in section 5-820 of the Juvenile Court Act. See 705 ILCS 405/5-815, 5-820 (West 2012). However, respondent's arguments are identical with respect to both provisions, and he has offered no persuasive reason to distinguish his case from the identical eighth amendment and proportionate penalties challenges that our court has rejected with respect to the HJO statutory provision mandating commitment until the age of 21. We see no reason why our decisions rejecting the same challenges to the HJO provision do not apply with equal force to the equivalent VJO provision. Accordingly, we conclude that respondent's arguments with respect to both the HJO and VJO mandatory sentencing provisions of the Juvenile Court Act must fail." *Isaiah D.*, 2015 IL App (1st) 143507, ¶¶ 59-61.

See also *Deshawn G.*, 2015 IL App (1st) 143316, ¶¶ 54-56 (relying on *Isaiah D.*'s reasoning to conclude that the respondent's proportionate penalties argument fails).

¶ 45    We find *Isaiah D.*, as well as *Shermaine S.*, *Deshawn G.*, and *A.P.*, to be well reasoned and adopt the holding that the VJO statute does not violate the proportionate penalties clause of the Illinois Constitution. Accordingly, respondent's argument must fail.

¶ 46    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 47    Affirmed.